


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kenneth Neiman,

    Plaintiff,

No. 16-CV-04265

v.

Hon. John Robert Blakey

Citibank, N.A.

    Defendant.

<u>Plaintiff's Response to Defendant's Motion to Compel Arbitration</u>

NOW COMES Plaintiff and responds to Defendant's motion to compel arbitration and responds as follows:

<u>Background</u>

1. This is a removal action that Plaintiff filed in state court and Defendant removed it to this Court. The gist of Plaintiff's First Amended Complaint ("Complaint") alleges a debtor-creditor relationship arising out of an "alleged" consumer credit card agreement.[1] Plaintiff alleges, *inter alia*, factual disputes and violations of federal consumer protection statutes. In lieu of answering the Complaint, Defendant filed the instant motion to stay in favor of arbitration pursuant to the alleged agreement.

2. On April 13, 2016, this Court entered an Order directing the parties to comply with this Court's Standing Order relating to the initial status conference by requiring a jointly signed submission be filed by no later than June 6, 2016 with the conference to

---

[1] Plaintiffs use of the word "alleged" is because there is an question of fact whether the agreement attached to Plaintiff's Complaint is the account agreement that was agreed to when the account was opened and if so whether any amendments, modifications were or could have been made as further alleged herein.

1

occur on June 16, 2016 at 9:45 A.M. This Court should defer ruling on this motion until the parties submit the joint submission required for the initial status conference since Defendant hasn't responded to Plaintiffs settlement overtures noted below.

    3.  On or about April 13, 2016, Plaintiff received the removal notice and promptly telephoned Defendants counsel T. Rowden to make an early/initial good faith effort to discuss settlement or narrow the issues. Plaintiff advised being bed bound for six weeks following an April 25, 2016 surgery. Last, Plaintiff suggested regular communication to reduce or eliminate Plaintiffs disabilities and ongoing treatment from interfering with this case.[2] Rowden stated E. Peel would contact Plaintiff as to the above, but she never did.

Argument

I. *The Agreement Hasn't Been Established Precluding Arbitration.*

    A.  Plaintiff's Complaint, at ¶4 alleges:

> On or about September 2012, Plaintiff and Defendant entered into an Account Agreement. ("Agreement") upon information and belief, a copy of said agreement is attached hereby as Exhibit "A". Defendant provided Plaintiff with a purported copy of the account agreement because Plaintiffs copy was lost."

The Complaint sets up a material fact question over the whereabouts of the original agreement. The purported copy of the agreement Defendant provided to Plaintiff as alleged above is relied upon by Defendant to seek arbitration. The Complaint alleges the agreement attached thereto was the originally formed in 2012 and that Defendant provided Plaintiff with said alleged agreement (from its website) because Plaintiffs copy was lost. Thus, that copy isn't certified as being the agreement that was entered into when the account was opened in 2012. Defendant cannot rely upon that agreement

---

[2] A discovery plan could be structured around Plaintiffs medical condition.

2

because it couldn't have been the agreement because it wasn't authored until 2013 because as evidenced by the date of its copyright. [Dkt. 1-1, at p. 23 of 53.] (Page 16 of the alleged agreement. The bottom of the last page of the agreement, (page 16) states:

"   © 2013 Citibank, N.A.
                                                                                07/13"

    Since Defendant never provided any evidence the original agreement was amended after its formation, an agreement copyrighted 2013 couldn't apply to an agreement undeniably formed in 2012. Since Defendant hasn't provided the original agreement or provided admissible justifying a copyrighted agreement from 2013, Defendant hasn't proven the agreement attached by Plaintiff (as provided by Defendant) is controlling. Rather, counsel for Defendant patently took the agreement Plaintiff's Complaint provided by Defendant (pre-suit) without conducting the required good faith pre-filing investigation on this issue pursuant to Rule 11. In order to interpret an arbitration clause, the agreement must be established first.

    Since no evidence was proffered to substantiate a 2013 copyright over an agreement formed in 2012, Defendant hasn't met its burden for failure to prove the arbitration clause is contained within the agreement governing this account. Defendant cites *Green Tree Fin. Corp. v. Randolph,* 121 S. Ct. 513 (2000) requiring the party seeking arbitration prove the validity of the arbitration clause. However, as noted above, Defendant doesn't address its premature to interpret any provision without establishing the agreement first. Until the correct agreement is determined there's no basis to seek let alone order arbitration, but order Defendant to show cause for making the above argument and order discovery on the limited threshold issue to discovery the agreement at formation and any

subsequent amendments and other related documents. Defendant shouldn't be permitted to provide any such evidence in reply when any such evidence could or should have been provided in the opening motion. Otherwise, Plaintiff will be prejudiced by not having responded thereto. Without limited discovery establishing the correct agreement, this Court must deny the motion because it cannot interpret the agreement.

    B. *If Arbitration Is Proven As Being Included In the Agreement, A Question Exists Whether Plaintiff Is Entitled to Opt-Out.*

After an agreement is established and if it includes a valid arbitration clause, a fact question exists over whether Plaintiff should have received an offer to "opt-out" of arbitration. See Exhibit "1" attached. This Court can take judicial notice the attached article proves Defendant has been offering other account holders similarly situated the right to "opt-out" of arbitration. Said information is based upon the following link: (www.consumerreports.org/consumer-protection/did-your-bank-send-you-an-opt-out-of-arbitration-letter/) See Exhibit "2" attached. Plaintiff received each monthly account statement. However, Plaintiff never received any communications therein or otherwise regarding the right to "opt-out" of arbitration, if applicable, or any other similar such notice by separate means. See Exhibit "1" attached. Further, Defendant didn't provide any evidence it provided Plaintiff with said opt-out notice.

The above limited discovery request should also include the purported "opt-out" notice. Had Plaintiff received an "opt-out" notice for arbitration, Plaintiff would have done so consistent with filing this lawsuit. In the interests of judicial economy Plaintiff didn't seek said discovery upon service of this motion (that could be due before a ruling herein) or file a motion to stay this motion pending the outcome of any discovery to avoid

4

needlessly increasing the cost of litigation. Moreover, said limited discovery wouldn't prejudice Defendant because it wouldn't waive this motion and Defendant would be required to provide discovery over this issue through arbitration. Thus, this Court should defer ruling on this motion pending limited discovery to ascertain the agreement in question and the issues relating to the foregoing "opt-out" notices.

### C. *If Arbitration Is Proved, It Doesn't Preclude This Court From Deciding Injunctive Relief.*

Plaintiff's Complaint seeks injunctive relief. [Dkt. 1-1 at p. 14 – 16.] See Plaintiff's Complaint at e.g. p. 10 (Count IV). If an enforceable arbitration clause is proven, Plaintiff should not be prevented from pursuing injunctive relief as to count IV prior to referring this matter to arbitration because this Court can retain jurisdiction for that purpose. *Merrill, Lynch, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211 (7th Cir. 1993). (Recognizing equitable power of court to grant injunctive relief in arbitrable dispute); *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639 (9th Cir. 1988) (Holding arbitration agreement does not strip court of authority to issue an injunction.) Defendant did not address this Courts ability to retain jurisdiction to decide Plaintiffs count for injunctive relief before arbitration. It's prejudicial to refer count IV to an arbitrator in the interests of time because all elements to enjoin Defendant from continuing to provide derogatory information to third parties including credit bureaus (without prejudice) until outcome of this case.[3] Dkt. 1-1, p. 15 of 53 (Complaint at e.g. p. ¶ 11) Defendant would benefit by suspending its negative reporting during the pendency of this case by fulfilling their duty to mitigate Plaintiffs alleged damages at no cost to Defendant.

---

[3] In short, Defendants derogatory reporting is having a negative collateral effect on Plaintiffs ability to borrow, the cost thereof, causing credit lines to be reduced, affecting insurability and other damages.

5

Wherefore, Plaintiff prays for an Order denying the motion consistent with the above or staying a ruling pending the aforesaid limited discovery and/or reserve jurisdiction to hear and decide count IV.

                                          Respectfully Submitted,

                                    By: _____
                                          Kenneth Neiman

Kenneth Neiman
Plaintiff
1705 Overland Trail
Deerfield, Illinois 60015
Tel: 224-223-6105

State of Illinois )
                )SS
Lake County  )

## Affidavit of Kenneth Neiman

I, Kenneth Neiman, if called to testify in this matter I could and would truthfully and competently testify to the matters averred herein.

1. Affiant is the named Plaintiff in this case.

2. Plaintiff obtained the account alleged in its Complaint in 2012.

3. On April 25, 2016 affiant underwent surgery affecting his spinal cord to implant an epidural catheter to continuously infuse a narcotic cocktail to facilitate walking. The side effects of said medications affect affiants' ability to physically and cognitively function normally including preparing important documents.

4. Affiant is ready, willing and able to provide relevant medical documentation in support of the averments herein on an "in-camera" basis and/or file same under "Seal". But not for affiant's medical condition averred herein, Affiant would have moved this Court for injunctive relief as to count IV of the Complaint.

5. Defendant didn't provide affiant with a replacement agreement as of the date the agreement was formed. Defendant instructed affiant to procure a copy of the agreement from Defendants website. Plaintiff obtained the alleged agreement from Defendants website but Defendant would not verify it was the correct agreement or explain how a 2013 copyrighted agreement could control an account formed in 2012 without one or more amendments.

6. Affiant received each monthly account statement, but never received any notices from Defendant offering Plaintiff the right to opt-out of arbitration. If offered the right to opt-out of arbitration, Plaintiff would have duly opted-out of arbitration consistent with filing this lawsuit.

7. Affiant is unaware of any prejudice Defendant could or would sustain if Defendant suspend providing all derogatory information at issue in this case to credit bureaus without prejudice until a further adjudication from this Court. Affiant will be prejudiced if affiant must await the appointment of an arbitration panel before seeking interim injunctive relief.

Affiant sayeth not.
Affiant certifies the foregoing as true.
_____
Kenneth Neiman

7

# ConsumerReports

# Did Your Bank Send You a Letter Letting You Opt Out of Arbitration?

By Mandy Walker

Last updated December 10, 2015

---

In late August, Citibank began sending letters to its credit card and bank account customers allowing them to opt out of forced arbitration. Forced arbitration clauses, also called mandatory or predispute arbitration clauses, are usually buried in the fine print of lengthy contract agreements and limit your ability to take legal action against a company if you have a disagreement with it in the future.

These clauses,                            , are in millions of consumer contracts. In addition to many financial products, they're in the fine print of numerous website agreements, as well as the terms for            and            ,            ,            ,            ,            ,                  , and even certain employment and            agreements.

Here's how forced arbitration usually works: If you have a legal beef with a company, it picks an arbitrator who will settle the dispute. The decision is usually private, which means other consumers in the same

Ex "2"

position won't know what happened to you. And there's little basis for appeal if you don't agree with the arbitrator's decision. Arbitration clauses often restrict you from pursuing any type of court action, including joining similarly harmed individuals in a class-action lawsuit, where the results would be public. If you opt out of an arbitration clause, you'll have the option to file legal action in court against the company if wrongs you. In the case of Citibank, customers can opt out by writing and mailing a letter back to the company—there is no form to fill out or prepaid envelope to use.

## Why Is Citi Making This Change Now?

Citibank spokeswoman Elizabeth Fogarty says the company began introducing these revised agreements based on a number of factors, including customer feedback. The letters will continue to arrive in customer mailboxes for several more months, eventually reaching millions of consumers.

The move comes just a few months after the Consumer Financial Protection Bureau released a lengthy report on the use of forced arbitration clauses in financial services agreements, and announced it intended to pass rules limiting the use of these clauses, which could happen as early as next year.

Now, however, an attempt is being made by some lawmakers to add a paragraph into the 2016 federal spending bill that would block the CFPB from moving forward on its rulemaking to rein in the use of forced arbitration clauses in consumer financial services agreements. Our sister publication, The Consumerist, explains in more detail in the forced arbitration rider.

Citibank's letter offers consumers a choice when it comes to their legal options, but few customers actually opt out of binding

arbitration. "How many of us really read what looks like junk mail from our bank?" says says Brad Reid, business professor and senior scholar at the Dean Institute for Corporate Governance and Integrity at Lipscomb University in Nashville, Tenn. "So while the opt-out provision is good, the bank is probably counting on very few people ever triggering it."

Indeed, although 27 percent of the more than 400 credit card contracts the CFPB's March report looked at included an opt-out provision, none of the consumers it interviewed had opted out. Three consumers reported being given an opportunity to do so—but those three were mistaken. None of them actually had a contract that would have allowed them to opt out. "People are more focused on the cell phone, credit card, or other product they're buying and don't really read the fine print in agreements," Reid says.

Consumers Union, the advocacy arm of Consumer Reports, thinks lawmakers should be fighting against forced arbitration, rather than stalling the CPFB. "Congress should not block the CFPB as it works to rein in forced arbitration abuses in the area of consumer financial services," says George Slover, CU's senior policy counsel. "An opt-out letter is not going to be enough to fix the forced arbitration problem. And ultimately Congress needs to pass legislation to *protect* consumers against this unfair practice."

> **to stand up to Wall Street and oppose adding anti-CFPB riders to the omnibus spending bill.**

# Opt Out If You Can

Citibank customers have a limited time to act. Letters are being mailed on a rolling basis, and those that were sent out in late October, for example, say customers must send a letter postmarked by

December 10 to a P.O. Box in Sioux Falls, South Dakota to opt out. That letter must include account holders' names and a statement saying they specifically reject arbitration. If you are a Citi customer and have yet to receive a letter, open up and read any correspondence Citi sends you; letters will continue to be sent to customers into next year, says Citibank's Fogarty. We'd suggest you send an opt-out letter via USPS Certified Mail, Return Receipt Requested. Keep a copy of everything you send and your receipt. This will prove that you opted out if you later need to file a lawsuit and Citibank claims you didn't opt out.

The language and process are similar to that of American Express, which began allowing its customers to opt out in 2013. Amex customers can opt out by sending a letter to an El Paso, Texas P.O. box within 45 days after receiving their new card; they do not get the agreement that explains the opt-out procedure until they receive the card.

Bank of America eliminated its forced arbitration clauses from credit card agreements in 2009. The CFPB found that many midsized banks and credit unions do not use them. Most other large banks still include them in the fine print of their contracts, however.

---

© 2006 - 2016 Consumer Reports

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



Kenneth Neiman,

    Plaintiff,

No. 16-CV-04265

v.

Hon. John Robert Blakey

Citibank, N.A.

    Defendant.

## Notice of Filing

To: U.S. District Court, c/o Clerk of the Court, 219 S. Dearborn, Chicago, Illinois, 60604
    Citibank, N.A. c/o Thompson Coburn, 55 East Monroe St., Chicago, Illinois 60603
    dmangian@thompsoncoburn.com

PLEASE TAKE NOTICE on May 10, 2016, I filed with the Clerk of Court Plaintiff's Response to Defendant's Motion to Compel Arbitration attached.

Respectfully submitted,

Kenneth Neiman

Kenneth Neiman
A plaintiff
1705 Overland Trail
Deerfield, IL 60015
224-223-6105

## Certificate of Service

I, Kenneth Neiman, certify served a copy of the attached Response to Motion to Compel Arbitration by e-mail to the above counsel on May 10, 2016.